State ex rel. LaRose and others (Board of Vocational and Adult Education of Superior), Appellant, vs. Buechner, City Manager, and others, Respondents.*

*December 5, 1945—February 15, 1946.*

* Motion for rehearing denied, with $25 costs, on April 12, 1946.

For the appellant there was a brief by *Spohn, Ross, Stevens & Lamb* of Madison, and oral argument by *William H. Spohn*.

*George D. Flynn* of Superior, for the respondents.

WICKHEM, J. So far as its merits are concerned, this action involves solely matters of statutory construction. The question is whether the one and one-half-mill limitation imposed by sec. 41.16, Stats., upon taxes for the support of vocational schools includes such sums as are necessary for interest upon and amortization of bonds issued for the construction of buildings to house the activities of the vocational school board.

Petitioner contends that the section in question imposes a tax limitation on funds for maintenance only. Respondents contend that the sum includes not only maintenance but also debt service. This is not a matter calling for the application of general legal principles. The problem here is to examine the provisions and history of a none-too-clear legislative enactment in the hope that we may ascertain the legislative intention.

In 1911, by chs. 616, 664, Laws of 1911, the legislature enacted secs. 553p—1 to 553p—15, Stats., instituting in the cities of the state what was then called "industrial education." Under this law the city of Superior set up a local board of vocational and adult education in 1912. This board functioned until 1937. From 1912 to 1931 the board provided industrial and vocational education by utilizing existing school space. In 1931 the city, at the request of the board, erected a building for vocational school purposes and issued vocational bonds in the amount of $70,000 to meet the cost. Maturities of the bonds ran from 1944 to 1950, inclusive. At the time of the issuance of the bonds the city levied a direct, annual, irrepealable tax sufficient to pay the interest on the bonds, and directed the city clerk to spread such tax on the tax roll each year during the term of the bond issue. In November, 1941, it authorized the issuance of refunding bonds to retire and refund the city's indebtedness upon several bond issues, including the one above referred to. Again, the city authorized an irrepealable tax levy for the payment of interest and principal upon these bonds. From 1931 to 1941 the board annually filed its request for moneys necessary to operate the vocational schools and the city levied a tax for this purpose within the statutory limit of one and one-half mills on each dollar of taxable property. During this period the city separately levied and collected a tax sufficient to pay the annual interest upon the bond issue. This controversy arose when in 1942, 1943, and 1944

the city deducted the annual interest and also the annual instalments necessary to amortize the principal on the bond issue from the amount requested by the board. This action was based upon the conclusion of the city that the statutory limitation of one and one-half mills was applicable to sums necessary both for annual support and to service bond issues for the construction of vocational school buildings. The effect of this action was, of course, to reduce the amounts available to the local board for operation of the schools.

Petitioner contends that the term "maintenance," as used in the statutes limiting the tax levy in respect of vocational schools to one and one-half mills, must be given its ordinary and usual meaning and that the debt service was plainly not included within it; that this is quite clear in the Vocational School Act up to the amendment of 1927 and that the amendment of that year made no important change in the situation.

The city contends that a consideration of the statutory provisions and history indicates the contrary and the trial court was also of this view.

In order to resolve this controversy, it will be necessary to set forth in some detail the history of the provisions relating to vocational schools. As enacted in 1911 the act provided as follows, so far as material to the present controversy:

"Sec. 553*p*—4. 1. The local board of industrial education of every city, village or town shall report to the common council, or village or town clerk at or before the first day of September in each year, the amount of money required for the next fiscal year *for the support* of all the schools established. . . .

"2. There shall be levied and collected in every city, village or town, subject to taxation under sections 553*p*—1 to 553*p*—15, inclusive, a tax upon all taxable property in said city, village or town, at the same time and in the same manner as other taxes are levied and collected by law, which together with the other funds provided by law and placed at the disposal of said

city, village or town for the same purpose, shall be equal to the amount of money *so required by said local board* of industrial education *for the purposes of said sections.*

"3. The rate of tax levied for the purposes of sections 553*p*—1 to 553*p*—15, inclusive, in any town, village or city shall not in any one year exceed one-half mill for *the maintenance of all schools created under said sections. . . .*"

In 1917, by sec. 1, ch. 436, Laws of 1917, the tax limitation was increased from one-half to three-quarters mill. In 1919, ch. 191, Laws of 1919, the law was amended in several important respects. A new subsection was added to sec. 41.16, Stats.,.which provided:

. "(3) The rate of tax levied for the purposes of sections 41.13 to 41.21, inclusive, in any town, village or city shall not in any one year exceed three-fourths mill for the maintenance of all schools created under said sections. . . ."

It was further provided that "Whenever the local board of industrial education *in any city of the first class* shall deem it necessary to erect new buildings, or to make additions to old buildings, or to purchase sites for such schools or additions to old sites, . . . said board may . . . send a communication to the common council of such city, stating the amount of funds needed for any of said purposes, . . . requesting said common council to issue vocational school bonds . . . and thereafter said common council may, in its discretion, cause said vocational school bonds to be issued . . . in the same manner as other bonds are issued in such city. . . ."

"The comptroller of such city shall annually set aside, out of any taxes collected in such city for an industrial education fund, a sufficient sum to pay the principal and interest which may become due on any of said bonds in the year for which such taxes are collected; provided, that if the local board of industrial education shall refuse or neglect to report according to law a sufficient amount of money required by it for the

next fiscal year to pay the principal and interest on said bonds each year, the common council of such city shall levy a suf-· ficient tax for such purpose. . . ."

Sec. 3, ch. 191, Laws of 1919, provided for the amendment of sec. 926—11 (3), Stats., in such a way as to permit cities operating under special charters to borrow money and to issue bonds "for the erection of new vocational school buildings, or addition to old buildings, or to equip such new or old buildings, or to purchase sites for vocational schools or additions to old sites."

In 1921, by sec. 311, ch. 242, Laws of 1921, sec. 926, Stats., was repealed, and sec. 67.04 was enacted, by ch. 576, Laws of 1921, sec. 67.04 (2) (b) empowered cities of the second, third, and fourth class to borrow money and to issue bonds, "(b) To purchase, erect, enlarge, equip and maintain public buildings for its use; schoolhouses, including buildings for parental schools and vocational schools. . . ."

Ch. 385, Laws of 1925, amended sec. 67.04, Stats., by eliminating the reference to cities of the second, third, and fourth class and substituting the following: "(2) Cities shall not borrow money or issue bonds therefor for any purpose except only those specified in this subsection. . . ." Par. (b), as above quoted, was left undisturbed. Sec. 67.04 (2) (b) remains unchanged to this date in the statutes.

By ch. 261, Laws of 1929, the limitations in sec. 41.16 (3), Stats., to cities of the first class was deleted, and since 1929 the power to issue vocational bonds appears to exist in all cities not only by reason of the provisions of sec. 67.04 (2) (b) but also by the provisions of sec. 41.16 (3). The reason for this duplicate vesting of power in municipalities is not clear and may be the reason why in the revision in 1927 there appears to have been some question whether sub. (3) of sec. 41.16 should not be dropped from the statutes as superfluous and unnecessary.

It thus appears from an examination of the statutory provisions that up to 1919 vocational schools, then referred to as "industrial schools," were limited to the use of existing facilities; that from 1919 to 1921 cities of the first class and special-charter cities could bond themselves for erection and purchase of vocational school buildings; that from 1921 to 1925 all cities could issue bonds for these purposes; that from 1929 on there appears to have been a duplicate grant of this power by secs. 41.16 (3), Stats., and by 67.04 (2) (b). Until 1919 the provisions of sec. 41.16 (3), relating to bond issues for the purchase or erection of buildings, applied only to cities of the first class.

With this background, the difficulties of construction may now be approached. Sec. 41.16, Stats., has since 1919 required the local board to report its requirements for operating, supplies, and buildings. The tax limitation was applicable to "the purposes of sections 41.13 to 41.21, inclusive, . . . for the maintenance of all schools created under such sections." The petitioner quite naturally emphasizes the use of the word "maintenance," whereas the city and trial judge put heavy reliance upon the reference to the purposes of secs. 41.13 to 41.21, which sections bracket and include sec. 41.16 containing the authority to issue bonds for acquisition and building of schools. Up to this point it appears to us that while the matter is not too clear, the views of the trial court are correct.

In 1920 (sec. 1, ch. 22, Laws of Sp. Sess. 1920) the limitation was raised from three-quarters to one and one-half mills, and in 1921 provisions were made extending the power to issue vocational school bonds to all cities of the second, third, and fourth class. This appears to us to fortify the conclusions of the trial court. It seems unlikely that the extension of the powers to issue bonds and build vocational school buildings to smaller cities, coupled with an increase in the mill-tax limitation, would have been made unless the legislature understood

that the tax was to cover capital outlays for interest and principal, as well as items coming under the ordinary meaning of maintenance. That the law as it stood in 1919 should be so construed appears to us to be the reasonable view. It is true that sec. 41.16 (3), Stats., as it existed in 1919, applied only to first-class cities and that only such other cities as operated under special charters were permitted to issue vocational school bonds. But it is to be noted, (1) that even in 1919 the local boards were to report capital needs, as well as maintenance needs; (2) that if the board did not report a sum sufficient for interest and principal payments, the city was nevertheless required to levy a tax. These two factors, combined with the limitation of the tax to the purposes of specific sections, lead us to the conclusion that it was the legislative intent that in those cities which were authorized to bond for vocational school buildings the whole matter of maintenance and debt service was to be kept within the specified tax limitation. It is true that this could not apply to cities which were not permitted to bond for building or acquiring vocational schools. As to those cities, the three-quarter-mill limitation applied to maintenance charges. This view appears more reasonable in the light of the fact that sub. (3), in so far as it authorized bond issues, was limited to cities of the first class where there would be a large amount of property available and where the levy of a tax of three-quarters mill would raise a considerable sum of money. It seems unlikely that the legislature in 1920–1921 would double the mill tax and extend the power of issuing vocational bonds to numerous other cities unless they understood that the more liberal allowance was to take care of capital, as well as maintenance needs.

In 1927, sec. 122, ch. 425, Laws of 1927, revised sec. 41.16, Stats. The mill-tax limitation was left out of sub. (3) and placed in sub. (2), and there were changes in the wording of the subsections. Subs. (1), (2), and (3) of sec. 41.16, as amended in 1927, provided as follows:

"(1) The local board of vocational education shall annually report to the municipal clerk before September the amount of money required for the next fiscal year for the support of all the vocational schools, and for necessary school sites, buildings, fixtures and supplies.

"(2) The municipality shall levy and collect and the clerk shall spread on the roll a tax, which together with the other funds provided for the same purpose, shall be equal to the amount so required by said local board, but such tax shall not exceed one and one-half mills on the dollar.

"(3) Whenever the local board of vocational education in any city of the first class shall deem it necessary to erect, or to make additions to buildings, or to purchase sites or addition to sites, and a natatorium or natatoria in connection therewith, whenever directed by the common council to erect a natatoria as a part of such building, said board may inform the council of the amount of funds needed for one or more of said purposes, and request said council to issue vocational school bonds for any of said purposes, or any two or more of said purposes combined, and said council may cause vocational school bonds to be issued for any of said purposes or any two or more of said purposes combined, in the same manner as other bonds are issued in such city. Whenever bonds are issued for any two of said purposes combined, the local board may apply the proceeds to any of the purposes for which said bonds were issued in any proportion it deems necessary; provided, that whenever a natatorium shall be erected in connection therewith as herein provided, the maintenance cost of such natatorium shall be paid by the local board and the city in such proportions as shall be agreed upon by the common council and the local board, or if they cannot agree then each shall pay fifty per cent thereof. The comptroller of such city shall annually set aside, out of any taxes collected in such city for an industrial education fund, a sufficient sum to pay the principal and interest which may become due on any of said bonds in the year for which such taxes are collected; if the local board shall neglect to report a sufficient amount required by it for the next fiscal year to pay the principal and interest on said bond each year, the common council of such city shall nevertheless levy a sufficient tax for such purpose. It shall not be necessary for such city to comply with the provisions of chapter 65 of the

statutes in making the first two bond issues, but all subsequent bond issues shall be subject to the provisions of said chapter."

It appears to us that that section strengthens the view of the trial court. Sub. (1), sec. 41.16, Stats., still requires the local board annually to report to the municipal clerk "the amount of money required for the next fiscal year for the support of all vocational schools, and for necessary school sites, buildings, fixtures and supplies." By sub. (2) the municipality is required to levy a tax "which together with the other funds provided for the same purpose, shall be equal to the amount so required by said local board, but such tax shall not exceed one and one-half mills on the dollar." There is still retained in sub. (3) the provision that "if the local board shall neglect to report a sufficient amount required by it for the next fiscal year to pay the principal and interest on said bonds each year, the common council of such city shall nevertheless levy a sufficient tax for such purpose." The important difference between sec. 41.16 as amended in 1927, and the same section as it was revised in 1920, is that the mill-tax limitation does not now specifically apply to the "purposes of sections 41.13 to 41.21, inclusive," and contains no reference to maintenance or support of the schools. Under sub. (2), sec. 41.16, as it stood after the amendment of 1927 the tax limitation specifically applies to those requirements which under the mandate in sub. (1) are to be reported by the board as necessary for the support of the schools and for necessary school sites, buildings, fixtures, and supplies. In other words, it appears to us that in 1927 the tax limitation was applied to those needs which by sub. (1) the local board must annually report to the municipal authorities. The portion of sub. (3), above quoted, dealing with cases where the board fails to report interest and principal, gives strong support to the construction otherwise naturally arrived at, that interest and instalments of principal are to be reported under sub. (1) and that the tax limitation

is to apply to all requirements which the board is expected to include in its report.

For the foregoing reasons we consider that the trial court reached proper conclusions as to the legislative intent. The statutory provisions are not as clear as they could have been made but an examination of the history of the section persuades us that the trial court's conclusions were sound. In view of these conclusions on the merits of the case, we see no purpose in discussing defendants' contention that, in any case, *mandamus* would not lie to compel levy of the tax, nor do we deem it necessary specifically to deal with the question whether all or part of this controversy is now moot.

*By the Court.*—Order affirmed.

* Motion for rehearing denied, with $25 costs, on April 12, 1946.